STATE OF MISSISSIPPI *v.* JACKSON COTTON OIL COMPANY.

[48 South. 300.]

1. CORPORATIONS. *Constitutional law. Regulations. Charters. Power to repeal.*

Corporations are entitled to the protection of the state and federal constitutions, but may be dealt with differently from natural persons where their charters are subject to legislative will.

2. MONOPOLIES. *Trusts. Power to regulate. Constitution 1890, § 198.*

The legislature has general power, within constitutional limitations, to declare what combinations are inimical to public welfare and to regulate trusts, combinations, agreements etc., and its power in this regard is not derived from nor restricted by Constitution 1890, sec. 198, requiring the enactment of "laws to prevent all trusts, combinations, contracts and agreements inimical to the public welfare."

3. SAME. *Combinations in restraint of trade. Constitutional Law. Laws 1900, ch. 88, p. 125. Parts separable.*

Laws 1900, ch. 88, p. 125, prohibiting trust combinations, and agreements to restrain trade and hinder competition, and defining a trust and combine is not unconstitutional, such agreements being contrary to public policy and punishable; the statute is

Statement of the case.

severable, and if any one of its provisions be invalid the same may be eliminated, without affecting the validity of the other provisions.

4. SAME.  *Same.  Quo warranto.  Pleading.*

An information in the nature of a *quo warranto*, although it contains additional unnecessary averments, is sufficient and states a single cause of action, under Laws 1900, ch. 88, p. 125, defining a "combine" to be a combination to hinder competition and making such agreements illegal, if it charge that the defendant and another corporation were competitors in buying a commodity and, for the purpose of limiting the price of it, agreed with each other that defendant should not buy in a designated territory.

5. SAME.  *Same.  Penalties.*  Code 1906, § 5020.

A corporation having violated Laws 1900, ch. 88, p. 125, defining trusts and combines in restraint of trade and fixing penalties for entering into them, upon conviction after Code 1906 (containing a saving clause authorizing the prosecution of offenses previously committed) became operative, should be punished, under Code 1906, § 5020, regulating the subject, by a fine of two hundred dollars, a lesser penalty than provided for the offense at the time of its commission.

FROM the circuit court of, first district, Hinds county.

HON. JOHN B. RICKETTS, Special Judge.

The State, ex rel. R. V. Fletcher, attorney-general, appellant, was plaintiff in the court below; the Cotton Oil Company, appellee, was defendant there. The suit was begun by an information in the nature of a *quo warranto*. From a judgment sustaining defendant's demurrer to the information and dismissing the suit the plaintiff appealed to the supreme court.

The information, among other things, charged that defendant and the Wilson Cotton Oil Company, of Lexington, Miss., were competitors in business, each engaged in buying cotton seed, and, in the year 1903, agreed between themselves that the Jackson Cotton Oil Company would not buy any cotton seed in the town of Lexington, or in the territory adjacent thereto, and in consideration thereof the Wilson Cotton Oil Company agreed to ship the Jackson Cotton Oil Company an agreed amount of cotton seed at Lexington prices, and the pleading asserted that

said agreement was an unlawful combination in restraint of trade, for the purpose of limiting the price of a commodity, and that defendant thereby became a member of an unlawful trust or combine, in violation of the statutes of the state.

The demurrer to the information set up the following grounds: (1) That the acts complained of did not constitute a violation of the anti-trust statutes. (2) The statute, if violated, is unconstitutional, because it deprives the defendant of its property without due process of law and denies it equal protection of the law in violation of the fourteenth amendment to the Constitution of the United States. (3) Said statute is unconstitutional, because it impairs the obligations of a contract conferred upon defendant by its charter of incorporation, and is therefore in violation of article 1, § 10, of the Constitution of the United States. (4) Said statute is in violation of section 198, Constitution of the state, 1890, prohibiting combinations inimical to public welfare; the information not averring that the agreement complained of is inimical to the public welfare, or is an unreasonable restraint of trade. (5) Because the statute (chapter 88, p. 125, Laws 1900) under which this action was instituted has been repealed, without a saving clause as to proceedings of this nature. (6) That said petition is bad, because attempting to allege in one joint petition divers, different, and entirely independent grounds for a single cause of action.

*R. V. Fletcher,* attorney-general, for appellant.

There are twelve grounds of demurrer but they may be safely considered as involving but six propositions.

1. That the declaration is defective because there is no allegation that the acts set out are inimical to the public welfare.

2. That the declaration presents a misjoinder of separate and distinct causes of action.

3. That the acts set out occurred under the anti-trust laws of 1900 which have been repealed without a saving clause.

4. That the things complained of are not a violation of the anti-trust statutes of Mississippi.

5. That if they are in violation of the Mississippi anti-trust statutes, then such statutes are violative of art. 1, section 10, of the Constitution of the United States in that it impairs the obligations of contract.

6. That the anti-trust statute if held to condemn the act complained of is violative of the fourteenth amendment to the Constitution of the United States in that it deprives defendant of his property without due process of law and denies to him the equal protection of the law.

I shall consider these propositinos briefly in their order.

1. I respectfully submit that it is not necessary in a complaint to charge in so many words that the acts performed are inimical to the public welfare. If this language had been used it would have been merely a conclusion of the pleader and not a statement of fact. My contention is that the facts set forth show on their face there was a conspiracy or combination in restraint of trade, and that is sufficient. This court has held that the words "inimical to the public welfare" are a mere declaration of the effect of a trust not an added element of definition. *Barataria Canning Co. v. Joulian,* 80 Miss. 555, 31 South. 96.

2. It will readily be seen by a casual reading of the information that only one cause of action is pleaded. The case is predicated of the unlawful agreement between defendant and the Wilson Cotton Oil Cotton Company. If this act violates more than one provision of law, it is yet but a single act. But if mistaken in this, no rule of pleading requires a *quo warranto* complaint to be limited to a single cause of action.

3. The third contention is perfectly met by the statute. Code 1906, § 5020.

4. Upon the question as to whether the acts complained of constitute a violation of the anti-trust statutes, it is respectfully submitted that this question is conclusively settled by the case

of *Kosciusko Oil Mill & Fertilizer Co. v. Wilson Cotton Oil Company,* 90 Miss. 551, 43 South. 435. It is impossible by the utmost stretch of ingenuity to distinguish the facts in that case from the ones in the case at bar. The agreements in the two cases are identical, and since this court has held under the precise state of facts in this declaration described that the law has been violated, I deem it useless to argue this phase of the case. Unless the *Kosciusko Oil Mill Company case* is to be overruled, the demurrer in this case must be overruled on this point.

5. Upon the fifth point, which I hardly think will be pressed seriously, it is perhaps sufficient to say that the granting of a charter to any corporation does not constitute a contract giving permission to violate either the laws or public policy of the state. The corporation exists subject to provisions of the Constitution, and among others section 198, expressly conferring power on the legislature to suppress combinations in restraint of trade.

6. But it is finally said that the anti-trust statutes, if construed to condemn the acts charged in this case are obnoxious to that palladium of liberty, the fourteenth amendment to the Constitution of the United States? But the supreme court of the United States does not think so. In *Smiley v. Kansas,* 196 U. S. 447, 49 L. Ed. 564, the anti-trust statutes of Kansas were under review. The supreme court of Kansas had held that an agreement between four competing grain dealers whereby each agreed not to purchase more than one fourth of the entire output offered on that market upon penalty of paying to the others a certain per cent was a violation of the Kansas anti-trust law. The supreme court affirmed the Kansas court, holding that the agreement was clearly in restraint of trade and that freedom of contract was not thereby disturbed.

Now if an agreement not to buy more than one fourth of the product is unlawful, what about a contract not to buy any at all? *National Cotton Oil Co. v. Texas,* 197 U. S. 115, 49 L.

Ed. 689; *United States v. Joint Traffic Association,* 171 U. S. 505; *Addyston Pipe & Steel Co. v. United States,* 175 U. S. 211, 44 L. Ed. 136; *Northern Securities Co. v. United States,* 193 U. S. 197, 48 L. Ed. 79.

*Green & Green,* for appellee.

The questions presented are subdivided into two main heads:

If the anti-trust statute covers this contract then such portion violates (a) the fourteenth amendment to the federal Constitution, and (b) section 1, article 10.

Section 1, article 10, declares: "No state shall pass any law impairing the obligation of contracts," and the fourteenth amendment—"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

The only section of the anti-trust act whereon reliance can be placed is section 1, which provides "A trust and combine is a combination, contract, understanding or agreement expressed or implied between two or more persons, corporations or firms, or associations of persons, or between one or more either with one or more of the others (a) in restraint of trade."

These constitutional guaranties must be respected by the state courts, but the construction by a state court of its statutes in determining their meaning, their extent, and what is embraced, is conclusive upon the federal supreme court. In *Canning Co. v. Joulian,* 80 Miss. 561, 31 South. 961, it is said: "The words 'and is inimical to the public welfare, unlawful and a criminal conspiracy,' are a mere declaration of the effect of a trust—not an added element of definition attaching to each of the definitions already perfectly given in section 1437, Code 1892, from paragraphs 'a' to 'i' inclusive. This, if a proper construction of the statute, eliminates from consideration the question of what might be the effect if these limiting words were integrated into the definition. Legislation for the pre-

vention of trusts is had solely in pursuance of the state's police power; and unless the contract sought to be condemned falls within the scope of that power, the state is without authority.

The information is burdened with a multitude of damning expletives—mere conclusions of law foreshadowing the argument as to the legal effect of facts averred, and which for the purpose of this discussion are brushed aside (*Whitewell v. Company,* 125 Fed. [1903] 458), and grasping the facts which are sought to be tortured into an agreement within the police power it is alleged in the declaration:

"That in 1903, the said Jackson Cotton Oil Company, and the said Wilson Cotton Oil Company for the purpose of destroying and preventing competition, entered into a compact, agreement and understanding, whereby said Jackson Cotton Oil Company agreed and covenanted not to purchase any cotton seed during the season of 1903–1904 in the town of Lexington, Mississippi, or in the territory immediately adjacent thereto, and the said Jackson Cotton Oil Company further agreed to permit the said Wilson Cotton Oil Company to use the cottonseed house of defendant company in the town of Lexington, Mississippi, and the said Wilson Cotton Oil Company on its part in consideration of the said promise of the said Jackson Cotton Oil Company, agreed to ship to the said defendant company during said season four hundred tons of cotton seed at prices prevailing in the said town of Lexington."

It is averred that these parties were competitors but nowhere in the whole declaration is it averred that this agreement was inimical in any wise to public welfare; that it violated, in any way, the rights of a single individual; or that by the agreement set forth, a single citizen, in the remotest degree, suffered a single penny worth of damage. Stripped of useless verbiage, it was a contract between two persons for the sale of a commodity, with a current market value, at current market prices; from a very small town, and a very limited territory, by one company, having the right to sell, to another company, having the right to

buy, without a single fact shown from which the good faith of either the buyer or seller could be impugned, and in which the restraint of trade, if any, was confined to only two persons (and these the parties to the contract) dealing in a commodity, at current market prices, in a territory insignificant in extent; and the agreement not to buy in Lexington being one which was requisite in this transaction, and which is universally made for the protection of the seller in contracts where legal relations similar to the one here assumed are created. In fine, we have the creation of a *quasi* relation of principal and agent, to do a lawful thing, in a lawful way, for a lawful consideration, with a covenant that is usual and essential for the promotion of business relations between individuals. Were principals not at liberty not to be compelled to go into competition with their agents, in matters relating to the agency, and with reference to which the agent's acts are the principal's acts, the condition of this branch of the law would be confusion worse confounded. Trusts are a problem, but in restraining them we should not crush legitimate business. The facts surrounding neither company appear; the local conditions existent, whether it was in the early season or late that the contract was entered into, the necessity of the disposal of the seed by the one or of acquisition by the other; and we have thrust upon us the bare facts of the agreement, stripped of all concomitant circumstances, and, surely, the bounden duty of this court is to assume that those circumstances existed which will, if possible, render the agreement valid and void. The maxim is *"Ut res valeat quam pereat." Erb v. Morash,* 177 U. S. 584. In *Merrill v. Melchoir,* 30 Miss. 516, it is said: "Every presumption of law is in favor of the legality of a contract, and it is incumbent on the party alleging its illegality to show everything necessary to render it so, though the proof be of a negative character."

The limitations of the statute upon competitive corporations are set forth in section 5, which prohibits one company from "owning or purchasing the capital stock of another" (*Wood-*

*bury v. McClurg,* 78 Miss. 836) and acquiring the franchise, plant or equipment thereof, but there is none against one company buying of another anything that the other has to sell.

When the Buckeye Cotton Oil Company's mill burned, a large quantity of seed was put in such position that it was absolutely requisite that sale thereof should be made to save a total loss, yet right so to do, if the contract were in restraint of trade in any wise, is denied by the act in question under this interpretation.

The right alleged to be denied was to purchase, at prices fixed by competition, existing at that place. Respondent was under no duty to the public to buy seed at that point. We were free to buy whenever, wherever and of whom we pleased, and upon such terms as are usual in business for the prosecution of the business. Yet under the act in question, a contract, usual, necessary and employed every day, is sought to be annulled by reason of anti-trust legislation. In its ultimate analysis, that act as construed attempts to prevent an agreement between two individuals, whereby one, who has the money to purchase and desires to do so, but is prohibited by circumstances from going personally to the place, from constituting an agent whom he sends to make the purchase, and who, but for being so sent, would not have gone; and the principal, but for being able to send the agent, would not have purchased—from agreeing with his agent, when so buying, that the principal will not personally bid against his agent.

In fine, declares that no one can have another act for him under an agreement with his own personal representative, that the principal will not bid against the agent, who is in the market solely to represent the principal, and who, but for being such representative, would not be in the market. It would be impossible to transact business without brokers and agents, and all of the branches of the law, existing for centuries, would be set at naught, because a man made an agreement with his own representative not to buy personally when he had an agent

therefor. Trade would most certainly suffer, and business become stagnated if the fatal fallacy of competition "to the death" were carried to such an excess that a person must be sent to jail for making an agreement, with himself, not to bid against himself, for that which he alone wants, and when no attempt is made to influence any one save himself.

*The liberty of contract under the federal constitution.* In *Reynolds v. Mitchell,* 1 P. Wms. 188, the leading case upon this point, it is declared: "Another reason is drawn from Magna Charta, which is infringed by these acts of power; that statute says, *Nullus liber homo, etc., disseisetur de libero tenemento vel liberatibus, consuetidinibus suis, etc.,* and these words have been always taken to extend to the freedom of trade." *Thompson v. Means,* 11 Smed. & M. (Miss.) 609, cites this case. *Townsend v. Hurst,* 37 Miss. 679; *Andre v. Morrow,* 65 Miss. 315, 3 South. 659, cited in 75 Miss. 73; *Houck v. Wright,* 77 Miss. 476, 27 South. 616.

The limits upon the state's police power as to contracts are set forth in *Lochner v. New York,* 198 U. S. (1905) 56, wherein Mr. Justice Peckham said:

"It must, of course, be conceded that there is a limit to the valid exercise of the police power by the states. There is no dispute concerning this general proposition. Otherwise, the fourteenth amendment would have no efficacy, the legislatures of the states would have unbounded power, and it would be enough to say that any piece of legislation so enacted to consecrate to morals, to health or to the safety of the people; such legislation would be valid, no matter how absolutely without foundation the claim might be. The claim of the police power would be a mere pretext—become another and delusive name for the sovereignty of the states to be exercised free from constitutional restraint. This is not contended for. In every case that comes before this court, therefore, where legislation of this character is concerned, and where the protection of the federal Constitution is sought, the question necessarily arises: Is this

a fair, reasonable and appropriate exercise of the police power of the state, or is it an unreasonable, unnecessary and arbitrary interference with the right of the individual to his personal liberty, or to enter into those contracts with relation to labor which may seem to him appropriate or necessary for the support of himself and his family? Of course the liberty of contract relating to labor includes both parties to it. The one has as much right to purchase as the other to sell labor.

"This is not a question of substituting the judgment of the court for that of the legislature. If the act be within the power of the state it is valid, although the judgment of the court might be totally opposed to the enactment of such a law. But the question would still remain: Is it within the police power of the state? and the question must be answered by the court. . . .

"The act is not, within any fair meaning of the term, a health law, but is an illegal interference with the rights of individuals, both employers and employes, to make contracts regarding labor upon such terms as they may think best, or which they may agree upon with the other parties to such contracts. Statutes of the nature of that under review, limiting the hours in which grown and intelligent men may labor to earn their living, are mere meddlesome interference with the rights of the individual and they are not saved from condemnation by the claim that they are passed in the exercise of the police power and upon the subject of the health of the individual whose rights are interfered with unless there be some fair grounds, reasonable in and of itself, to say there is material danger to the public health or to the health of the employe, if the hours of labor are not curtailed. If this be not clearly the case, the individual whose rights are thus made the subject of legislative interference are under the protection of the federal Constitution regarding their liberties of contract as well as of person, and the legislature of the state has the power to limit their rights as provided in this statute."

In *Packing Co. v. Bay,* 200 U. S. (1906) 185: "It would ac-

complish no public purpose, but simply would provide a loophole of escape to persons inclined to elude performance of their undertaking, if the sale of a business and temporary withdrawal of the seller, necessary in order to give the sale effect, were to be declared illegal where a nice scrutiny could discover that the covenant possibly might reach beyond the state line. We are of opinion that the agreement before us is not made illegal by either of the provisions thus far discussed." *Hopkins v. United States,* 171 U. S. 592, 19 Sup. Ct. 45, 43 L. Ed. 290; *Anderson v. United States,* 171 U. S. 616; *Smith v. Alabama,* 124 U. S. 465, 473, 8 Sup. Ct. 564, 566, 31 L. Ed. 508; *Harper v. California,* 155 U. S. (1894) 662; *Allegeyer v. Louisiana,* 165 U. S. (1896) 589; *Butchers' Union Co. v. Crescent City Co.,* 111 U. S. 746, 762; *Powell v. Pennsylvania,* 127 U. S. 678, 648.

And taking the statute in the light in which similar litigation was construed, in *Ballard v. Mississippi Cotton Oil Co.,* 81 Miss. 573, 34 South. 533, this court said:

"But where, as in all these cases, there are just two general words, 'any employe,' what the court does is simply glance at the evidence in each case, and from that evidence determine, not from the provisions on the face of the statute, whether the particular employe is or is not the kind of employe falling within the supposed, not the declared, intent of the act, that furnishes a case, not for a severance of a statute, but for the limitation, by alleged judicial construction of general words, by the evidence in the case. We say alleged judicial construction. We think it is judicial legislation. The latter—that is to say, the so-called limitation by judicial construction; judicial legislation as we conceive it—is never permissible. And hence we think all the decisions we have referred to on this point clearly unsound."

*Smith, Hirsh & Landau,* on the same side

It has always been a common-law right to enter into contracts in partial restraint of trade but if our anti-trust statute is to be taken according to its usual meaning thousands of contracts

which have heretofore been lawful are now forbidden and made criminal offenses and subject parties to fines or imprisonment or both.

In this connection we do not think that we can state our contention in better form than by citing sections 905, 906 and 907, Eddy on Combinations.

The legislature cannot set a trap in the shape of a statute and authorize the courts to say that this trap was intended only for a certain class of persons, when it is wide open and the whole public are liable to walk into it, and then leave it to the discretion of the court to say which one was intended to catch and which not to catch.

The doctrine sought to be invoked has been expressly condemned by this court in the case of *Ballard v. Mississippi Cotton Oil Co.,* 81 Miss. 573, 34 South. 533. The doctrine of the *Ballard case* has been reaffirmed by this court in *Construction Co. v. Heflin,* 88 Miss. 363 42 South. 174.

In this connection we think it well to call the attention of the court to the fact that the supreme court of Indiana in the case of *Bedford Quarries Co. v. Bough,* 80 N. E. 529, has quoted the *Ballard case* with marked approval and held that all of the statutes of Indiana, which are upheld in the *Tullis case,* 175 U. S. 348, so far as railroad corporations are concerned, was unconstitutional so far as employes of other corporations are concerned.

The statute provides that certain facts shall be conclusive evidence of damage and this is an attempt to do by legislation what can only be ascertained by judicial inquiry. McGehee on Due Process of Law, p. 181, 182; *Chicago, Minnesota & St. Paul R. R. Co. v. Minnesota,* 134 U. S. 418; *Voght v. State,* (Sup. Ct. Ind.), 24 N. E. 680; *Marx v. Hanlhorne,* 148 U. S. 172; *Railroad Co. v. Simonson,* 64 Kan. 902; *Howard v. Moot,* 64 N. Y. 268.

Argued orally by *J. B. Stirling,* attorney-general, for appellant, and by *M. Green,* for appellee.

CAMPBELL,* Special Judge, delivered the opinion of the court.

This case has been argued by several counsel with a great wealth of learning, which has received due attention by the court, and, aided by it, we do not consider it proper to do more than to decide the questions involved in the case before us, leaving all others to be decided as they may arise hereafter.

While corporations are entitled to the protection of the Constitutions of the state and the United States, they are in a class by themselves, and their charters are held at the will of the legislature, subject to amendment or repeal, and they may be dealt with differently from natural persons. *Berea College v. Kentucky,* 211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. ——

The power of the legislature to prohibit "trusts, combinations, contracts and agreements inimical to the public welfare" is not derived from or dependent on section 198 of the state Constitution of 1890, which neither confers nor limits its power, which exists by virtue of the general grant of legislative power. This section imposes on the legislature the duty to pass such laws, and the use of the expression "inimical to the public welfare" by the legislature has no effect, except to show that what it prohibits is by it regarded as of that character. That expression might be stricken from the Constitution and laws without affecting the validity of the law. It is for the legislature to declare what is inimical to public welfare, and it is only when it transcends the limit of legislative power that the courts may interpose to shield the fundamental law from violation.

This case is to be determined by chapter 88, p. 125, Laws 1900, in force in 1902, when the act complained of by the information occurred. We do not regard that statute as unconstitutional, for it is certainly true that an agreement, the purpose and effect of which are directly to restrain trade and hinder competition in the sale or purchase of a commodity, is against public policy and void and punishable.

---

* FLETCHER, J., having been of counsel in the case before his appointment to the bench recused himself, and J. A. P. CAMPBELL, ESQ., a member of the supreme court bar was appointed and presided in his place.

If it is true that any provision of the act of 1900 is violative of the Constitution of the state or the United States, it may be disregarded and eliminated, since the various provisions are severable, and do not present the difficulty which has sometimes caused statutes to be condemned.

We find no fault with the information containing several unnecessary averments, but all characterizing a single cause of action. Its averments bring this case fully within the case of *Kosciusko Oil Mill & Fertilizer Co. v. Wilson Cotton Oil Co.*, 90 Miss. 551, 43 South. 435, 8 L. R. A. (N. S.) 1053, decided by this court, which is decisive of this.

The appellee, if it shall be convicted, is not liable to the penalty declared by section 5004 of the Code of 1906, for the offense charged occurred in 1903, when the act of 1900 was in force, the penalty for violation of which was forfeiture of charter; and section 5020 of the Code provides that for any former violation of the law the penalty may be a fine of $200, without forfeiture of charter. So, if appellee shall be convicted, the trial court, regarding the clear intimation of the legislative will for lenience in such case, may be expected to impose only a fine of $200, without forfeiture of charter.

Judgment reversed, demurrer overruled; and cause remanded for such proceedings as may be had according to law.